Henwood *v.* McCallum & Robinson, Inc.

(*Nashville,* December Term, 1942.)

Opinion filed January 30, 1943.

CANADA, RUSSELL & TURNER, of Memphis, for appellant.

V. ALEXANDER, JR., and SHEPHERD, OWEN & HEISKELL, all of Memphis, for appellee.

MR. JUSTICE NEIL delivered the opinion of the Court.

This suit was brought in the Chancery Court of Shelby County by complainant Henwood, as trustee for the St.

Louis-Southwestern Railway Co., to recover from the defendant McCallum-Robinson, Inc., the sum of $790.21, representing the amount alleged to be due as freight charges upon certain shipments of cotton shipped by the defendant in Texas and consigned to itself at Memphis. The bill alleges that, complainant was duly appointed trustee of the St. Louis-Southwestern Railway Co. by the United States District Court for the Eastern District of Missouri, and that he has been operating said railway by virtue of his appointment; that the defendant McCallum & Robinson, Inc., is a corporation, having its principal place of business in Memphis, and engaged generally in the manufacture of various sorts of cotton merchandise. The complainant avers that from time to time shipments of cotton were made from Houston, Texas, to Shippers' Order, notify McCallum & Robinson, Inc., at Memphis, which shipments were delivered to the defendant; that defendant paid the freight charges on all shipments delivered to it, said charges being calculated upon a rate of 42c per hundred pounds. The dates of each shipment and the amount of charges paid are set out in the original bill. The date of the first shipment is given as November 7, 1936, and the date of the last shipment as January 8, 1937. It is further alleged that frequently cotton will be shipped from various points to Memphis and collected there and subsequently reshipped to other points; that under various tariffs provision is made whereby a "floating-in" rate is applicable to the movement of such cotton from outlying points to the central point of storage, and, when the cotton is later reshipped from Memphis to another point of destination, the through rate from the original shipping point to the final point of destination is charged, subject to a credit of the "floating-in" rate. At the same

time it is provided in the tariffs that, if the cotton is not reshipped within a certain time (two years), then the original local rate from the point of shipment to the central point will be charged. The defendant paid 42c per hundred, called the "floating-in" rate. It is contended by the complainant that, since the cotton received by defendant was not reshipped within the time fixed by the tariff schedule of rates, it is liable for a higher rate. The total amount paid by the defendant under the "floating-in" rate was $1,424.35. Now the complainant avers that, since the cotton was not reshipped, it is liable for a different rate, which would amount to a total on all shipments of $2,214.56, making a difference of $790.21, for which amount suit was instituted.

The defendant appeared by counsel and moved the Court to require the complainant to set forth the various dates on which each of the shipments was delivered to the defendant and the name of the person to whom each of said shipments was consigned. The motion was allowed and the original bill was accordingly amended. Whereupon the defendant demurred to the bill as amended, upon the following grounds: "That the bill herein, as amended, shows on its face that the cause of action was not brought within three years from the date on which such cause of action accrued, as required by United States Code Annotated, Title 49, Chapter 1, Section 16, Sub-Section (3), applicable to actions by carriers for the collection of transportation charges, and that such cause of action is barred by the statute of limitations applicable in such cases."

The Chancellor sustained the demurrer. The complainant appeared from his decree and it is assigned as error. That portion of the statute referred to in the demurrer is as follows:

"All actions at law by carriers subject to this chapter for recovery of their charges, or any part thereof, shall be begun within three years from the time the cause of action accrues, and not after." 49 U. S. C. A., section 16(3) (a).

Now it is insisted by counsel for defendant that the Statute of Limitations applicable to this section includes paragraph (3), (a) and (e); that "this statute not only fixes the period of time within which suit shall be brought, but definitely designates when the period of limitation begins to run." The paragraph 16, (3) (e), provides:

"The cause of action in respect of a shipment of property shall, for the purposes of this section, be deemed to accrue upon delivery or tender of delivery thereof by the carrier, and not after."

The sole point of contention between the complainant and defendant relates to the time when the Statute of Limitations begins to run, whether from the date of delivery of a shipment in Memphis, or from the date of delivery to another point, i. e., when the cotton is reshipped by the defendant. It is complainant's contention that the right of action accrues only when the cotton is reshipped and delivered to another point beyond Memphis; while defendant contends that the right of action accrues when such shipment is delivered at Memphis.

It must be borne in mind that, under the tariffs which are ratified and approved by the Interstate Commerce Commission, the consignee at Memphis has two years within which to reship the cotton before it is liable for payment of a higher rate than the "floating-in" rate of 42c. Counsel are in agreement that the courts uniformly hold that a right of action generally accrues when the complainant can bring suit to recover a sum of money alleged to be due and unpaid. Under the freight tariff,

approved by the Interstate Commerce Commission and published as required by law, the said tariff permitted defendant to hold the cotton in its warehouse at Memphis for a period of two years and reship to another point of delivery. This was for the benefit of the shipper, not the railroad. We think it is fair to assume that the defendant knew it was not entitled to this rate unless the cotton was reshipped. It cannot be doubted but that the complainant also knew that it was plain duty to collect a higher rate, a local rate, in the event the cotton was not reshipped, and furthermore if it failed to collect the higher rate it would be liable to heavy penalties. This is true because it would result in granting a rebate to the shipper which is expressly outlawed by the Interstate Commerce Act, in subsection (7), section 6, 49 U. S. C. A., section 6(7), as follows:

". . . Nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs."

While ambiguous tariffs are to be construed favorably to the shipper, *Southern Pacific Co.* v. *Lothrop*, 9 Cir., 1926, 15 F. (2d), 486, yet in ascertaining the meaning of the language of a tariff the object sought to be accomplished is to be considered. *Smokeless Fuel Co.* v. *Chesapeake & O. Ry. Co.*, 1925, 142 Va., 355, 128 S. E., 624. Now the object sought to be accomplished in the instant case was to enable the defendant, and other cotton brokers in Memphis, to have the advantage of a low rate, provided the cotton was not held longer than two years. We can hardly escape the conclusion that, under this reduced rate, the railroad could not bring suit within two

years after the arrival of a shipment of cotton at Memphis. Had it instituted such an action, it would have been immediately faced with a valid plea of prematurity of suit. We think it naturally and necessarily. follows that 49 U. S. C. A., section 16(3) (e) means that "the cause of action" shall be deemed to accrue "upon delivery or tender of delivery thereof" of cotton at a point to which it was reshipped from Memphis. Otherwise the 42c rate, or through rate, would not and could not apply. Moreover, the rate itself clearly contemplated a reshipment, and the right to sue for the higher rate would not accrue until the right to reship under the tariff schedule had expired.

 Our attention is called to the fact that 49 U. S. C. A., section 16, was amended by Congress on September 18, 1940, changing the period of limitation from three years to two years. Considering a case arising under the amended act, by way of analogy with the instant case, the complainant railroad could never sue to recover for an undercharge in freight rates if the reasoning of defendant's counsel is approved and followed, that the period of limitation begins to run from the date the shipment is delivered in Memphis. If the railroad should sue the cotton merchant within two years after he received the shipment, a plea of the two year period of limitation would be effective. Such a result would be disastrous to the brokers and merchants in Memphis, which is the largest inland cotton market in the world, since all would be deprived of the "floating-in" or through rate. We do not think it was the intention of Congress to put either carriers or shippers in such a difficult situation. If the contention of the defendant should be approved by this Court, and later affirmed by the Supreme Court of the United States, now that the period of limitation

538 is reduced from three years to two years, the railroads

is reduced from three years to two years, the railroads would be compelled to change their entire rate structure or a new Statute of Limitations adopted by Congress in order to protect the rights and privileges of carriers and shippers. Otherwise all parties in interest would be in a state of utter confusion. It would be most unreasonable, and well nigh unthinkable, for us to adopt a rule of construction that would lead to such a result.

It has heretofore been pointed out in this opinion that complainant would be subject to heavy fines and penalties if it failed to collect upon the basis of a local rate, if the cotton was not reshipped according to the tariff rate. It could not escape the penalty of the law by any failure to assert its claim. No one has ever yet attained innocence in the eye of the law by a failure to observe its clear mandate.

The Interstate Commerce Act was enacted long before the freight tariff which fixed the rights and liabilities of the shipper and carrier in the instant case. It was intended to limit the power of the common carriers to fix their rates, and put an end to discrimination among and preferences to shippers, and as a protection of the shipper rather than for the benefit of the carrier. *Pennsylvania R. Co.* v. *Midstate Horticultural Co.* (Cal. App.), 124 P. (2d), 902; *Vicksburg, S. & P. Ry. Co.* v. *Paup,* 5 Cir., 47 F. (2d), 1069.

The tariff, which allows a lying-in period of two years before reshipping takes place, cannot possibly be construed as amending or modifying the Act of Congress. If we are to adopt the interpretation placed upon the tariff by able counsel for defendant, it would result in that very thing, i.e., in cutting down the three year period of limitation to one year. Moreover, if the purpose of the Interstate Commerce Act is to limit the

power of carriers in dealing with shippers as to rates and preferences, we are not justified in giving the tariff a latitudinarian interpretation, and thereby enable them to defeat in any measure its objects and purposes.

It would unnecessarily prolong this opinion for us to endeavor to discuss and distinguish all the cases cited by counsel. They have been examined and given due consideration. The only case that seems to have a close analogy to the instant case is *Chicago, R. I. & P. R. Co.* v. *Petroleum Refining Co.* (D. C.), 39 F. (2d), 629. And yet we find, upon a careful reading of the case, that it is unsatisfactory as an authority. The case involved the receipt of empty tank cars to be reshipped when filled with oil, within a specified time, in which event the rate on the loaded cars could be credited against the empties moved in theretofore. Suit was brought by the carrier for the difference in the rate and defendant pleaded the same Statute of Limitation that is involved here. The Court held that a tank car was not a shipment of property within the meaning of the act. The plea of the Statute of Limitation was overruled on the ground that to uphold defendant's contention would require the carrier to bring suit before its right of action accrued.

The case of *United States* v. *Wurts,* 303 U. S., 414, 58 S. Ct., 637, 82 L. Ed., 932, is discussed by both counsel for complainant and defendant, the former contending that it has no application, while the latter insists that it is quite in point on the question of when a right of action accrues. The question was directly raised in a suit by the United States to recover amounts erroneously refunded under the Internal Revenue Act, 26 U. S. C. A., Int. Rev. Acts, page 460, which provided that such suits would be barred unless brought within two years "after the making of such refund". It was held that the stat-

ute ran from the date of actual payment by the taxpayer. In the course of its opinion the Court says:

"Obviously, the Government had no right to sue this taxpayer to recover money before money had been paid to him. The construction urged by respondent would allow the Statute of Limitations to begin to run against recovery on an erroneous payment before any such payment is made." 303 U. S., 418, 58 S. Ct., 639, 82 L. Ed., 932.

Counsel for defendant, appellee, cite, among other cases, *Wisconsin Bridge & Iron Co.* v. *Illinois Terminal Co.*, 7 Cir., 88 F. (2d), 459. In this case the railroad sued to recover a balance alleged to be due for freight charges on a series of shipments of structural steel. There was a handling of the property in transit. The steel was shipped in an unfinished state from Pittsburgh and fabricated at North Milwaukee and then shipped to Alton, the shipper paying the freight demanded by the railroad. It was the contention of the railroad that it had applied the wrong rate and the suit was to recover the balance alleged to be due. Now it appears that the matter in dispute was submitted to the Interstate Commerce Commission, as arbitrator, which was not determined by it until after the running of the Statute of Limitations. The suit was brought within one year after the determination of the issue by the Commission. The trial court held that the shipper was estopped to plead the Statute of Limitations. Upon appeal to the Circuit Court of Appeals, it was held that the defense of limitations was not subject to estoppel, and that events occurring subsequent to the delivery of the shipment may not be relied upon to extend the period within which the suit must be brought. We do not think the case is controlling. After all is said,

we get back to the question of what constitutes a delivery of property within the meaning of the act, whether it is at Memphis, the intermediate point, or at a reshipping point. Applying the general principle that a right of action does not accrue until the complainant first has the right to bring his suit, it is manifestly clear that no suit could have been instituted by the complainant upon any shipment until the expiration of two years after it was received by defendant. We think, as did the Supreme Court in *United States* v. *Wurts, supra,* "It would require language so clear as to leave room for no other reasonable construction in order to induce the belief that Congress intended a Statute of Limitations to begin to run before the right barred by it has accrued." Moreover, it would be departing into the realm of speculation for us to conclude that the Congress intended to fix a limitation upon a right of action that could be changed, or altered in any way, by a tariff agreement between carriers and shippers, as contended for in the instant case.

We have discussed this case at length because of the importance of the question involved to the railroads and shippers of various commodities in interstate commerce.

For the reasons herein stated, the action of the Chancellor in sustaining the demurrer and dismissing complainant's bill is reversed. The cause is remanded.