# HENWOOD v. McCALLUM & ROBINSON, Inc.—208 S. W. (2d) 546.

Western Section.   August 5, 1946.

Petition for Certiorari denied by Supreme Court, January 17, 1947.

540

Canada, Russell & Turner, of Memphis, for complainant.

Chandler, Shepherd, Heiskell & Williams and V. Alexander, all of Memphis, for defendant.

ANDERSON, P. J. The bill was filed by Berryman Henwood, trustee for the St. Louis Southwestern Railway Company, a common carrier, against the defendant, McCallum & Robinson, Inc., to recover a sum representing alleged undercharges in freight rates accruing on several shipments of damaged cotton originating at Houston, Texas, and moving from that point over the T. & N. O. Ry. Company to Shreveport, Louisiana, and thence by the lines of the Saint Louis Southwestern Railway Company to Memphis. All of the shipments were consigned to the order of the shipper with instructions to notify the defendant at Memphis, Tennessee, and were delivered to the defendant at that point.

The defendant demurred to the bill on the ground that it affirmatively appeared that the action was barred by the applicable statute of limitations, U. S. C. A., Title 49,

Sec. 16, paragraph (3) (a) and (3) (e). The chancellor sustained the demurrer but on appeal to the Supreme Court this decision was reversed and the cause remanded for answer and proof. Henwood v. McCallum & Robinson Inc., 179 Tenn. 531, 167 S. W. (2d) 981.

In its answer the defendant preserves a legal question as to the proper construction of the Federal statute and also alleges that the suit was not in fact brought within the time limit fixed by the statute as construed by the Supreme Court. The answer further denies the defendant's liability for the alleged undercharges on the shipments in question.

Proof was by deposition and upon the trial the chancellor ruled against the defendant on both points and rendered a decree for the amount sued for. The defendant appealed.

The assignments of error present two questions: the application to the facts of the Federal statute of limitations as construed by our Supreme Court, and the liability for the additional freight charges under applicable tariffs. We find it expedient to consider the last question first.

The freight charges actually collected on the several shipments were assessed at a rate of 42¢ per 100 pounds. The complainant contends that this rate was not a normal, ordinary rate on cotton moving from Houston, to Memphis, but was a "floating-in", or transit rate, assessed under a transit tariff specifying certain conditions with respect to reshipment with which the shipper must comply in order to obtain the benefit of it; that these conditions were not met and as a result the normal rate of 65¢ was applicable to each shipment. The defendant contends that the so-called transit tariffs claimed by the

complainant to govern the shipments provided the applicable local rate from Houston to Memphis, and further that if this be not so, they grant only a privilege of reshipment and a consequential adjustment on the basis of a through rate from point of origin to ultimate destination, which privilege may be exercised by the consignee or not, just as he desires. In other words, the defendant contends that reshipment may be made under the local rate from Memphis to ultimate destination, or under the through rate from Houston to ultimate destination, as the shipper may elect, and in either event he is entitled to the 42¢ rate from Houston to Memphis.

The principle question for decision involves the construction of the tariffs introduced in evidence. The 42¢ rate applied to the several shipments is provided in St. Louis Southwestern Railway Company Local and Joint Freight Tariffs, Nos.8859-e and 8859-f. These and their various supplements are essentially the same so far as our question is concerned, and for convenience we refer to 8859-e only. This tariff is headed, ''Local and Joint Freight Tariff, No. 8859-e, Rates, Rules and Regulations Governing Concentration of Cotton and Cotton Linters at . . .'' Item 5 headed ''Concentration Privileges'', provides for ''concentration and/or compression at'' various points, including Memphis, and that ''reshipment will be accorded cotton and cotton linters originating at stations in'' various states including Texas, on the St. Louis Southwestern Railway and connections ''to the extent authorized in items Nos. 5 to 120, inclusive.'' The same item defines concentration as the stopping in transit of cotton for weighing, sampling, tagging, marking, grading, assorting, concentration, storage, reconditioning, selling or other commercial reasons.

Item 10, headed "Application of Inbound Rates", provides that charges for movement of cotton from points of origin to concentration points for concentration and/or compression will be assessed on the basis of rates on pages 9 to 15, inclusive.

Item 12, headed "Outbound Shipments Application", provides that on cotton that has been concentrated and/or compressed and is subsequently reshipped via St. Louis Southwestern Railway freight charges will be readjusted to the basis of protecting the through rate therein authorized, and further, that the through rate to be applied is the through rate from the original point of origin as represented by the inbound freight bills, to final destination, applicable from such point of origin via the concentration point in effect on the date of shipment from the initial point of origin on the weight of the cotton reshipped plus the various transit charges provided in said Item 12. In Note 1 to that Item it is provided that reshipment may be made from Memphis via other lines participating in through rates from points on the St. Louis Southwestern Railway, and its connections, provided that the St. Louis Southwestern Railway is not a party via any route to the rate from Memphis.

Item 15-a of Supplement 8 to 8859-e contains the basis for the 42¢ rate which was applied to the several shipments. With certain exceptions not here pertinent, it is therein provided that inbound charges will be computed by use of the distance scale of rates except that the rate to Memphis shall be 2¢ per hundred pounds higher than the rate shown. The applicable distance for the shipments involved is shown without dispute to be over 500 miles and under 600 miles for which a 40¢ rate is pro-

vided. With the 2¢ arbitrary charge applicable to Memphis, the 42¢ rate is found.

Item 75-a of Supplement 8 to 8859-e provides that when cotton is disposed of locally at transit stations, or reshipped not in accordance with the tariff provisions, the freight bills must be cancelled at the time of local disposition or reshipment and "inbound charges to the transit stations shall be increased to the basis of full rates on file with the Interstate Commerce Commission on Arkansas Corporation Commission. In making such cancellation, no substitute will be permitted."

Item No. 110-a in the same supplement provides that shippers desiring concentration or storage in transit will be required to keep a complete record of the receipt of the cotton showing from what stations received and the disposition thereof, and affidavits as to the accuracy of such records shall be furnished when demanded. The item further provides that records of the compress or warehouse into which the cotton is unloaded shall be made available for inspection by the carrier, and that in the event of failure or refusal to maintain such records or in all particulars to conform to the rules, concentration or storage in transit will not be allowed.

Item No. 120-a of the same supplement provides for payment of the balance of the through rate upon reshipment with surrender of the paid freight bills or for an adjustment of charges on presentation of a claim filed within twelve months from the date of the outbound shipment from the transit station when supported by original paid freight bills into the transit point, copies of outbound bills of lading and a reshipping certificate to the effect that such transit privileges may legally be given under the rules of the tariff.

This Item further provides that claims may be filed and paid only to the owners of freight bills covering the movement of the cotton into the transit point and for the execution of an assignment of the freight bills and of a certificate of sale by the seller or buyer showing that there had been no local disposition or unpermitted re-shipment.

The complainant took the deposition of Mr. H. Clark Roberts, his general freight agent, whose qualifications as an expert in the compilation of freight tariffs and the structure of freight rates cannot be doubted. His explanation of a tariff according "transit privileges" and rates in connection therewith, is as follows: "Well, 'Transit' is a fiction of a continuous movement from origin to final destination, with a stopover in transit for commercial reasons. The fiction becomes a fact when the outbound movement from the transit station is connected with the inbound movement to the transit station by surrender of the inbound paid freight bill and outbound bills of lading to the transit carrier for the adjustment of charges to the basis of through rates from origin to final destination. A stopover at the transit station is not delivery at destination."

As an illustration, he gave the following:

"Well, under either one of these transit tariffs, namely 8859-e or 8859-f, a shipment of any amount of cotton from one bale on up can be made to Memphis, Tennessee, from Brinkley, Arkansas, on the basis of the rates published in these tariffs at the time of delivery at Memphis. At some later date, within the time limit prescribed by these tariffs, the cotton may be reshipped from Memphis to say Greenville, South Carolina, and to a through rate

from the point of origin, Brinkley, Arkansas, to Greenville, South Carolina, will be protected.

"Q. 41. And what do you mean by 'Will be protected'? Just explain that. A. Or will be assessed for the fiction of a through movement from Brinkley, Arkansas, to Greenville, South Carolina. And when a consignee at Memphis, or a consignor from Memphis, surrenders to the St. Louis Southwestern Railway the inbound freight bills covering the movement from Brinkley, Arkansas, to Memphis, and copies of the outbound bills of lading from Memphis, Tennessee, to Greenville, South Carolina, then an adjustment of charges will be made so that the total charges collected will be based on the through rate from Brinkley, Arkansas, to Greenville, South Carolina, and any excess in the amount collected will be refunded to the claimant."

The witness further testified that if there were no transit tariff applicable to such a movement, the rate charged would be much higher because in that event the rate would be a combination of the two local rates—that is, the one from Brinkley to Memphis, and the one from Memphis to Greenville.

Mr. Roberts also pointed out in the following language the purpose and advantages of transit privileges: "Well, transit privileges accomplish many results. But as confined to cotton it enables the movement of cotton from a given point to a large concentration centre, where it may be stopped in transit, and later reshipped, after the cotton has been treated in many commercial ways, including sampling, grading, weighing, tagging, marking, assorting, storage, re-conditioning, selling, or other commercial reasons."

We think the testimony of Mr. Roberts is a clear and correct interpretation of the purpose of the tariff under consideration.

Mr. V. Alexander, another rate expert, testified for the defendant. He differed in some particulars from Mr. Roberts, but with due deference to his undoubted qualifications, we are unable to accept his conclusion that under the facts here shown, "the local rate applicable has already been collected on the inbound movement" and the defendant is liable on no other basis.

■ ■ It is obvious from the tariff itself, as well as from the expert testimony, that the particular type of transit rate, or "floating-in" rate here under consideration, can never afford the basis for the final collection of freight charges on a movement covered by the tariff wherein it is provided. In all cases it is necessarily a provisional rate, furnishing the basis for a portion only of the total amount to be collected upon a through movement from the point of origin to a destination beyond the concentration point. After the conditions annexed to the rate are complied with, the consignee at the concentration point, or his assignee may obtain the benefit of the transit rate by having the amount collected on that basis applied to the amount due on the basis of the through rate from point of origin to ultimate destination. If these conditions are not complied with, then he is liable on the basis of the normal rate from the point of origin to the concentration point, and entitled to credit for what has been paid on the basis of the transit rate.

All of the cotton involved was damaged cotton, shipped into Memphis for reconditioning. After being dried and reginned, it was re-baled, the identity of the separate bales being lost in the process. It was not disposed of

locally, but was sold by the defendant to Cook & Company, cotton buyers, and by that firm reshipped from Memphis by rail. The destinations of the reshipments are not shown, nor is the carrier by which the shipments moved shown. No outbound bills of lading or inbound freight bills were surrendered by the defendant or anyone else, and there was no claim for any refund on any outbound shipment. In short, there is no proof in the record that there was a compliance with any of the several conditions which entitled the defendant to the 42¢ rate. It was, as said, entitled to the benefit of that rate only as a credit on the through rate applicable to movement over a permitted carrier from Memphis in connection with the movement to that point.

█ The rate of 65¢, which the complainant contends is the proper one in the circumstances shown, is found by the application of the provisions of Southwestern Line tariffs 208-c and 208-d, and their respective supplements. So far as is concerned any question in the present case, they are substantially the same, and hence we refer only to 208-c. On its face that tariff purports to provide rates on cotton and cotton linters from stations in Arkansas, Kansas, Louisiana, Missouri, New Mexico, Oklahoma and Texas, to stations in certain specified states, among them Mississippi and Tennessee. No rate is quoted to Memphis as a specified destination; but the tariff provides in substance that in such a case the rate shall be "the commodity rate in this tariff on said article to the next point beyond, to which a commodity rate is published herein on that article from the same point of origin via the same route." This is referred to as the "intermediate rule". The next point beyond Memphis to which a rate is quoted from Houston is Moore-

head, Mississippi, and the tariff provides that the rate to that point is 65¢.

However, in Note 4 to Item 130 of the tariff, referring to the "intermediate rule", it is provided that "if there is in any other tariff a commodity rate on the same article to the intermediate destination point applicable over the same route from the same point of origin, the provisions of this rule are not applicable to such intermediate destination point."

One of the defendant's principal contentions is based upon this provision. It is insisted that among the kind of rates published by railroads under the rules of the Interstate Commerce Commission is a "Single One-factor Mileage or Distance Rate applicable to the distance from and to points specifically named or incorporated by reference in the tariff." It is contended that the 42¢ rate was of this kind, applying specifically to cotton only from Houston, Texas, to Memphis, Tennessee, and hence the use of the "Intermediate Rule" is not warranted.

We think this contention is unsound for the reason, among others, that in our opinion, an "in transit" rate, such as we hold the 42¢ rate to be, is not within the purview of the qualification found in Note 4 to Item 130. We think this is true because of the inherent nature of an "in transit" rate. As already pointed out, the type of "in transit" rate here involved is not a complete rate. It is only a part of a rate and as said, can never furnish the basis for the full amount to be collected on shipments contemplated by the tariff. Since the Intermediate Rule provides the method for finding an entire rate, it seems to us clear that the exception to the use of that rule provided in Note 4 of Item 130 must necessarily contemplate

the same kind of rate, that is, what may very well be termed the normal rate.

■ A strong argument is made in the defendant's brief with respect to the burden of proof. It is insisted that the theory of the bill is that the complainant has collected a less amount than is required by law to collect and that therefore the burden is on the complainant to show the illegality. Stated differently, it is contended that having collected the freight charges on the basis of a 42¢ rate, it will be presumed that this was a legal charge, and the burden is on the complainant to show the contrary by proof that the cotton did not move beyond Memphis in the manner required by the tariff fixing the transit rate. We are cited to numerous authorities in this connection, but we think none of them in point.

It is of course the general rule that the burden is on the complainant to prove the averments of his bill, but we think the fundamental fallacy of defendant's position lies in the fact that the transit tariff under which was charged the amount collected from the defendant manifestly does not afford the basis for a final settlement of the freight charges on a movement of cotton such as those here involved. The complainant has shown shipments from Houston, Texas, to Memphis, Tennessee. Nothing else appearing, the defendant was liable for freight charges on the basis of the normal rate applicable to such a movement which, under the construction we have adopted, was 65¢ per hundred pounds. It is further shown that collection on this basis was not made. Indeed, in the view we have taken, the collection made being provisional only was not the correct measure of the defendant's liability in any event. If the cotton was reshipped in the manner contemplated by the tariff, then

defendant was liable on the basis of the through rate from the point of origin to the ultimate destination. If not reshipped, it was liable on the basis of the local or normal rate from point of origin to Memphis.

In the circumstances stated, we think complainant made out a prima facie case which operated to shift to the defendant the burden of going forward with the evidence. See generally Whipple v. McKew, 166 Tenn. 31, 60 S. W. (2d) 1006; Shockley v. Produce Co., 158 Tenn. 148, 158, 11 S. W. (2d) 900.

■ The claim to the benefit of the 42¢ rate, we think, is in the nature of an affirmative defense and the burden on the defendant to show a compliance with the conditions precedent to its applicability which are expressly fixed by the tariff authorizing it. Gibson's Suits in Chancery, Sec. 443. This is especially true since the defense is based on facts which necessarily are peculiarly within the knowledge of the defendant. See generally Colonial Milling Co. v. Holt, 3 Tenn. App. 617; Jones on Evidence, Vol. 3, Sec. 494 et seq.; 20 Am. Jur. 145, Sec. 140.

■ We think it clear that the required showing has not been made. True, there is testimony of a very general nature that the reconditioned cotton had been sold to Cook & Company and by that firm reshipped to some other point or points, the identity of which does not appear. Nor does it appear whether the reshipments were over a permitted carrier, and there is neither contention or evidence that the requirements with respect to documentary evidence in connection with the disposition of the cotton were met.

■ The remaining question is with reference to the statute of limitations. This, we think, is settled by the opinion of the Supreme Court in Henwood v. McCallum

& Robinson, Inc., supra.  We agree with counsel for the complainant that the proper construction of the court's holding in that case is that the statute of limitations does not begin to run until the time for the reshipment of the cotton and the surrender of the paid freight bills has expired.  If suit were brought prior to the expiration of that period, it would be premature because brought at a time when under the tariff the defendant still had a right to substitute its cotton and use the inbound freight bills for credit.  If this conclusion be correct, we do not understand it to be contended that the suit was not brought within the required period.

Moreover, if the statute began to run upon the delivery of the cotton to ultimate destination, the defendant has failed to discharge the burden of this defense because we think the proof is insufficient to show a delivery at ultimate destination at any particular time.

The result is that the decree of the chancellor is affirmed at the cost of the defendant.

Baptist and Ketchum, JJ., concur.