## LOUISIANA & ARKANSAS RY. CO. v. ARKANSAS OAK FLOORING CO. et al.

### No. 1619.

District Court, W. D. Louisiana, Alexandria Division.

Jan. 17, 1947.

T. W. Holloman and White, Holloman & White, all of Alexandria, La., and A. L. Burford, of Texarkana, Ark., for plaintiff.

Coleman & Gantt, of Pine Bluff, Ark., for defendants.

PORTERIE, District Judge.

The Stipulation of Facts by the counsel of both sides becomes the Findings of Fact in the case. They are long, but we must quote them. A narrative summary of the case will not be necessary as it will be gleaned from the stipulations.

### I.

"Plaintiff is a corporation created and existing under the laws of the State of Delaware, operating a line of railroad in interstate commerce in Louisiana and through Rapids Parish thereof.

"Arkansas Oak Flooring Company is a corporation created and existing under the laws of the State of Delaware, with its principal office at Pine Bluff, Arkansas, doing business in Louisiana, at Alexandria, in Rapides Parish, Louisiana, within the limits of the Alexandria Division of the United States District Court for the Western District of Louisiana.

"American Surety Company of New York is a corporation organized and existing under the laws of the State of New York, qualified to do business in Louisiana, with the Secretary of State of Louisiana as its agent for service.

"This suit arises under a law regulating commerce, to-wit: 'Interstate Commerce Act'.

### II.

"On August 15, 1939, defendant Arkansas Oak Flooring Company entered into a contract with plaintiff for credit privileges under plaintiff's Rough Material Tariff 140, ICC No. 1540. The copy of the contract attached to the complaint is a true copy of said contract of August 15, 1939, between plaintiff and defendant Arkansas Oak Flooring Company.

### III.

"Under date of November 6, 1939, defendant Arkansas Oak Flooring Company and defendant American Surety Company of New York, executed and delivered to plaintiff a surety bond in the penal sum of Two Thousand Dollars ($2000.00) as provided in the aforesaid contract. The copy of the bond attached to the complaint is a true copy of said bond of November 6, 1939.

### IV.

"The allegations of Article VII of the complaint are true, except that the shipments therein mentioned were delivered to defendant Arkansas Oak Flooring Company, during the period of time beginning on September 12, 1942, and ending on May 12, 1943 and plaintiff collected from such defendant the net transit rate of 12 cents per one hundred pounds on said 2,876,527 pounds, amounting to $3,451.83, plus tax.

### V.

"Under said Rough Material Tariff 140, ICC No. 1540, the contract and bond therein provided for having been executed by defendant Arkansas Oak Flooring Company, plaintiff was authorized to collect the net transit rate upon delivery of the rough hardwood lumber to such defendant at its manufacturing plant at Alexandria, Louisiana.

### VI.

"Said tariff was issued and filed with the Interstate Commerce Commission and

was in force and effect throughout the period from September 12, 1942, to May 12, 1943, and covered the rough hardwood lumber shipped from Woodville, Mississippi, and delivered to Arkansas Oak Flooring Company at its plant at Alexandria, Louisiana, as set out in the complaint. During the aforesaid period ten supplements to said tariff were issued, numbered from 1 to 10, inclusive, but none of them changed or affected the provisions of said tariff as to the shipments involved in this action.

## VII.

"Under said tariff and contract, if such defendant failed to ship out a sufficient manufactured tonnage to fulfill the requirements of said tariff applicable to rough forest products received at such defendant's plant under the terms of said tariff, and within the time limit prescribed thereby, such defendant was bound to pay plaintiff the full local rate on any portion of such rough lumber shipped into its plant for which the required percentage of tonnage was not so shipped outbound. The local rate applicable in such case was 20 cents per one hundred pounds.

## VIII.

"In order to secure the credit privileges held out in said tariff and take advantage of the net transit rate of 12 cents per hundred pounds of the rough hardwood lumber shipped in from Woodville, Mississippi, said tariff required Arkansas Oak Flooring Company to reship the finished product manufactured therefrom at Alexandria, Louisiana, 'via the L. & A. Ry. Sibley, La., or Vidalia, La., I. C. System and/or connections to points on or beyond the I. C. System and/or connections.' It also required that such shipments of outbound tonnage be made within twelve months from the date of paid freight bills covering inbound movements of such rough hardwood lumber.

## IX.

"Under said tariff the shipment outbound of oak flooring weighing thirty per cent of inbound rough hardwood lumber was required to fulfill the requirements of said Rough Material Tariff and

entitle the shipper to the net transit rate of twelve cents per one hundred pounds.

## X.

"Under said tariff the rate on rough hardwood lumber shipped from Woodville, Mississippi, to Alexandria, Louisiana, from September 12, 1942, to May 12, 1943, was twenty cents per one hundred pounds and said rate should have been applied and would have been applied on the shipments involved in this action except for the contract and bond hereinbefore mentioned.

## XI.

"The dates of the paid freight bills covering the thirty-five carload inbound movements involved in this action were within the period from September 12, 1942, to May 12, 1943, the first being dated September 12, 1942, and the last being dated May 12, 1943.

## XII.

"On or before July 30, 1945, plaintiff presented to defendant, Arkansas Oak Flooring Company, freight bills showing the amount due on each of said shipments, figured at the local rate of twenty cents per one hundred pounds, aggregating $2,301.22. Such defendant did not pay same to plaintiff within thirty days after such presentation. No part of said amount of $2,301.22 has ever been paid plaintiff by either defendant.

## XIII.

"During the twelve months from the dates of the paid freight bills covering said thirty-five inbound shipments, totalling 2,876,527 pounds of rough hardwood lumber, delivered to defendant, Arkansas Oak Flooring Company, at its plant, Alexandria, Louisiana, namely: during the twelve months expiring over the period September 12, 1943, to and including May 12, 1944, defendant, Arkansas Oak Flooring Company, did not reship finished products manufactured therefrom at Alexandria, Louisiana, via the L. & A. Ry. Sibley, La., or Vidalia, La., I. C. System and/or connections to points on or beyond the I. C. System and/or connections, to cover the equivalent of said 2,876,527 pounds of rough hardwood lumber or any part thereof.

## XIV.

"During the said period from September 12, 1942, to May 12, 1944, defendant Arkansas Oak Flooring Company shipped via plaintiff's line of railroad to destinations beyond the switching limits of the station at Alexandria, Louisiana, where shipper's plant was located, outbound manufactured tonnage weighing approximately 5,163,900 pounds. The said shipments were delivered to the plaintiff on bills of lading in triplicate prepared by Arkansas Oak Flooring Company and setting out route and destination in each case. Plaintiff receipted and returned original to shipper and kept the copy marked "Shipping Order", which evidenced the contract between the parties and from such retained copy, made out the waybill to accompany the shipment. None of said shipments was routed via the L. & A. Ry., Sibley, La., or Vidalia, La., I. C. System and/or connections to points on or beyond the I. C. System and/or connections. Said 5,163,900 pounds, more or less, was credited to other accounts between plaintiff and defendant.

## XV.

"Rough Material Tariff 140, I. C. C. No. 1540, was published, filed, posted and open to public inspection in the manner required by the Interstate Commerce Act and the rules of the Interstate Commerce Commission, at all times after its filing on July 29, 1939.

## XVI.

"No copy of said tariff was furnished defendant for its Alexandria, Louisiana, office and that office had no copy of same. Mr. F. A. O'Neal, defendant's auditor at Alexandria, Louisiana, since 1936, would testify, if sworn herein, that he had not read said tariff and had no personal knowledge of the provision therein requiring shipments of outbound manufactured tonnage to be made within twelve months from the date of the paid freight bills covering inbound movements of rough hardwood lumber, or of the provision therein that a six months extension might be obtained, providing the shipper desiring same made application to the carrier not less than thirty days prior to the expiration of the time limit of the freight bills.

## XVII.

"Said O'Neal would further testify that on several occasions after 1933 and prior to the payment of the freight bills covering the thirty-five carloads of rough lumber involved in this suit, outbound manufactured tonnage was shipped under Other Rough Material tariffs more than twelve months after the dates of the paid freight bills covering the inbound rough material and credit was given defendant for such outbound tonnage. That on at least five occasions such outbound shipments were made two years or more after the dates of paid freight bills covering the inbound rough material movement. But that no outbound shipment was made after twelve months under Rough Material Tariff 140, I. C. C. No. 1540, and all credit given under said tariff were for such shipments made within twelve months from the dates of the paid freight bills covering the inbound rough lumber.

"Plaintiff would then prove by the Rough Material tariffs applicable to the outbound shipments made more than twelve months from dates of paid freight bills on inbound shipments, on which credit was allowed, that, on account of adverse market and other conditions prevailing, supplements were issued in about six month periods extending the outbound shipment issue time in order to enable shippers to secure the lower tariff rate, and that the credits given defendant in the cases of shipments after twelve months were pursuant to the permission of such tariff supplements.

## XVIII.

"From March 17, 1940, to July 18, 1945, the Western Weighing & Inspection Bureau, an agency of the railroads, checked defendant's operations under Rough Material Tariff 140, I. C. C. No. 1540. In each case defendant was furnished immediately with the Rough Material Report. In each case, the report referred to this tariff and showed the number and date of the oldest freight bill against which reshipment had not been made. These reports were made

on March 14, 1940, August 7, 1940, April 5, 1941, September 27, 1941, February 13, 1942, August 18, 1942, (on which date defendant had no outstanding freight bill against which shipment had not been made), February 13, 1943, October 7, 1943, June 7, 1944, and July 18, 1945. On the report of March 14, 1940, the necessary routing under this tariff for reshipment was set out. Said reports are attached to and made part hereof.

## XIX.

"With reference to the reports referred to in XVIII, above, the said Mr. O'Neal would testify that his attention was not called by the Western Weighing & Inspection Bureau inspectors to the provision of said tariff requiring reshipment in twelve months or to the provision of said tariff for a six months extension; that when the report was made by the representative of said Bureau on October 7, 1943, as mentioned in XVIII, above, the only inbound shipments of rough hardwood lumber from Woodville, Mississippi, which had been delivered to defendant Arkansas Oak Flooring Company more then twelve months prior thereto, against which outbound shipments of manufactured products had not been made, as provided by said tariff, consisted of six shipments aggregating 507,367 pounds and covered by paid freight bills dated from September 12, 1942, to September 18, 1942, inclusive; that the difference between the said local rate of twenty cents per one hundred pounds and the said net transit rate of twelve cents per one hundred pounds amounted on said shipment to $405.-89; that neither the said Western Weighing & Inspection Bureau nor the plaintiff called the attention of the said defendant to the fact that the said tonnage had expired or that other tonnage covered by paid freight bills dated from October 27, 1942, to May 12, 1943, inclusive, would expire; that the printed form of the report made by the representatives of the Western Weighing & Inspection Bureau contains the following form to be filled in by such representative: 'Tonnage due to expire within —— days unless reshipped —— Pounds'; that the blank spaces in the said form were not filled in by the representative of said bureau in the report made October 7, 1943, or in the report made June 7, 1944, as mentioned in XVIII, above, but on the report made June 7, 1944, the representative of the said bureau made the following endorsement: '2,876,527 # inbound tonnage expired 2–28–43 Request for extension being handled'; and that the first notice of a claim for additional freight on the shipments mentioned in the complaint in this action, or request for payment of the same, was through freight bills dated July 27, 1945, which were presented to the said defendant on or about July 30, 1945. Letter of Arkansas Oak Flooring Company to D. S. Lambeth, General Agent, L. & A. Railroad, dated June 20, 1944, and letter of J. R. Mills to D. S. Lambeth, dated June 24, 1944, are attached to and made part of this stipulation XIX.

## XX.

"This action was begun on September 11, 1945. "

The defendant has made two defenses to plaintiff's suit:

(a) That the plaintiff is estopped by its previous policy and course of dealing over a long period of time, and by the failure of its inspectors to give the information called for in their reports, from now insisting on a rigid time limit of 12 months, without notice to defendant, when the latter was not aware of the time limit and had been misled by the previous course of dealing between it and plaintiff; and,

(b) That this action was not brought within the time prescribed by Section 16 of tht Interstate Commerce Act, 49 U.S.C.A. § 16, and that any cause of action which plaintiff may have had was extinguished by that statute.

We must overrule the first defense, as modifications by carrier or shipper which might, or might not, bring on estoppel are not permitted under the Interstate Commerce Act.

"We are not unmindful of the hardship to respondent in the special circumstances, though petitioner asserts it would suffer equal hardship if the decision were the

other way. Nor do we ignore the strong equitable considerations which, in relation to other types of legislation not so permeated with provisions and policies for protecting the general public interest, might move against denying effect to such an agreement. But this case boils down to an old adage about sauce and geese, which need not be given citation." Midstate Horticultural Co. v. Pennsylvania R. Co. 320 U.S. 356, at page 367, 64 S.Ct. 128, 133, 88 L.Ed. 96. See also Crancer v. Lowden, 315 U.S. 631, 62 S.Ct. 763, 86 L.Ed. 1077; Boone v. United States, 6 Cir., 109 F.2d 560.

The second point of defendant, whereby it claims the suit is barred because the cause of action accrued more than two years before the action was commenced, does not help it either.

 The first delivery to defendant's plant at Alexandria was on September 12, 1942. The one year to reship expired September 12, 1943. There is a period of two years within which to file this suit. The action was begun September 11, 1945, within one day of the permitted time. Other deliveries were made, one as late as May 12, 1943, and, of course, all of these are not barred.

We hold that the two years of the statute cannot mean two years from delivery to defendant, but two years from delivery to ultimate destination. It is clear and simple to us that the defendant had two years after receiving the raw material at its plant to ship out from its plant the finished material.

"All actions at law by carriers subject to this chapter for recovery of their charges, or any part thereof, shall be begun within three years from the time the cause of action accrues, and not after." Interstate Commerce Act, § 16(3) (a).

"The cause of action in respect of a shipment of property shall, for the purposes of this section, be deemed to accrue upon delivery or tender of delivery thereof by the carrier, and not after." Interstate Commerce Act, § 16(3) (e).

See Central Railroad Co. of New Jersey v. United States, 257 U.S. 247, 42 S.Ct. 80, 66 L.Ed. 217, 221; 9 Am.Jur. 578, "Carriers", § 236; § 462; Boone v. United States, supra.

In the case of Henwood v. McCallum & Robinson, 179 Tenn. 531, 167 S.W.2d 981, what is said by the Supreme Court of Tennessee is particularly applicable to the instant case. We like its very simple and logical reasoning. See also United States v. Wurts, 303 U.S. 414, 58 S.Ct. 637, 82 L.Ed. 932; 34 Am.Jur. 91, "Limitation of Actions", § 113; Midstate Horticultural Co. v. Pennsylvania R. Co. supra.

Our civil law dovetails the interpretation of our Federal courts as to when the time of prescription (civil), or limitation, is to begin, and which is only from the time at which the right which is to be barred began to exist. Hernandez v. Montgomery, 2 Mart.,N.S., 422, 432; Cochran v. Violet et al., 38 La.Ann. 525, 529; Succession of Kretzer, 187 La. 247, 255, 174 So. 345.

Judgment in favor of plaintiff will be signed upon presentation.