**577**

CHICAGO UNION STATION COM-
PANY, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 66 C 259.

United States District Court
N. D. Illinois, E. D.

Dec. 14, 1967.

Robert H. Bierma, A. L. Foster, C. P. Callahan, Chicago, Ill., William C. Antoine, Philadelphia, Pa., for plaintiff.

Edward V. Hanrahan, U. S. Atty., Chicago, Ill., for defendant.

MEMORANDUM AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

ROBSON, District Judge.

Both parties have moved this court for summary judgment. The stipulation filed July 14, 1967, has apparently eliminated any question of fact and all that remains is a question of law.

Plaintiff Chicago Union Station Company is a corporation owned by three railroads to whom it provides services as it does to one other nonshareholder railroad. Plaintiff charges certain fees to its tenant railroads in proportion to the amount of use each tenant makes of the facilities. Plaintiff also makes a profit on the newsstands, restaurants, et cetera, to which it grants concessions. This profit, by agreement, goes to reduce the charges to the shareholder tenant railroads. Prior to the passage of 26 U.S.C. § 281, by virtue of court rulings, Chicago Union Station Company had to report these profits as income and pay the corporate tax on them, even though they were used to reduce the charges to the shareholder tenants. In addition, these owner-railroads had to report these reductions and pay a tax on them as dividends.

In 1962, Section 281 was enacted. It provided that where there was an agreement to provide the reductions mentioned, and the corporation actually credited the shareholder tenants with the amount of these "incidental" profits, no income was realized by the corporation, and no deductions above the actual amounts paid were allowed to the share-

holder railroads. This was done, the report of the Senate Committee on Finance stated, with an eye to the "financial problems faced by the railroads." The Committee felt it was "undesirable to increase their overall tax burdens." 1962 U.S.Code Cong. & Adm.News, p. 3990.

In 1951 and 1952, the plaintiff did not report the income it derived from these "incidental" operations. In 1958, the District Director of Internal Revenue determined deficiencies in the plaintiff's federal income tax liability for the years 1951 and 1952 with respect to a number of issues, including the nonshareholder income which had been used to reduce shareholder liability. The case was settled in 1960. A total of $100,000 was to be included in plaintiff's income, $50,000 in each of the years 1951 and 1952. This resulted in a tax assessment of $25,375 in 1951, and $26,000 in 1952. Plaintiff paid this $51,375 in 1960.

Chicago Union Station was reimbursed by its tenant shareholders for the full $51,375 because the shareholders were liable by prior agreement for all of plaintiff's tax payments. Pursuant to the settlement agreement which terminated the 1958 litigation, as "an additional consideration" for the settlement, the plaintiff was required to include this reimbursement in its income. Plaintiff did so, and as a result, paid an additional $26,714 in corporate income taxes.

It was stipulated by the parties that the plaintiff was entitled to a refund under the terms of Section 281 for the years 1951 and 1952. The Government, however, contests the refund claim of $26,714 (plus interest) for the year 1960 on the ground that a strict reading of Section 281 shows that it does not allow a refund for taxes paid on sums received as a tax reimbursement from the shareholder tenants. While apparently agreeing that Section 281 narrowly read does not encompass such reimbursements, since a refund has been allowed for 1951 and 1952, plaintiff argues that it should be put back to the same position it would have been in had the payments not been made in the first place.

If there had been no dispute over the plaintiff's tax due for the years 1951 and 1952, and no settlement agreement, both parties appear to agree that any reimbursement made to plaintiff by its tenant shareholders for taxes that plaintiff previously paid would fall under 26 U.S. C. § 110. That section allows Chicago Union Station as a lessor to exclude any such reimbursements from its gross income, and denies the tenant shareholders any deductions for these payments. Applied to the facts of this case, this would have meant that the $51,375 paid to plaintiff would not have been in its gross income, and it would have had its tax liability reduced by $26,714, the amount in issue in this case.

Both parties argue that the settlement agreement changes this situation because it specifically provided that the sum of $51,375 was to be included in plaintiff's income. This is an accurate statement insofar as it refers to the time of the filing of plaintiff's tax return in 1960 and prior to the passage of Section 281. However, after Section 281 was enacted, the foundation of this position is removed. Section 281 makes it clear that the payments made in 1951 and 1952 are not to be taxed. The government concedes this, and consents to judgment being entered for the plaintiff for $51,375. But payments made as a result of this now erroneous assessment or any agreement based thereon, says the government, cannot be recovered.

It is difficult to see why such a related tax payment cannot be recovered. Section 281 was passed to aid the railroads because they were in financial trouble. The Committee reports recognized the nature of corporations such as Chicago Union Station, and realized that any burden on them would be a burden on the railroads because the railroads owned them. If we leave this $26,714 tax payment as it stands now, the parties affected are the railroads. This conclusion opposes the intent of the Congress in passing Section 281.

In addition, the government's argument would not return the plaintiff to

essentially the same position it would have been in had the assessment never been made. Section 2(b) of Pub.L. No. 87–870, 1962 U.S.Code Cong. & Adm. News, p. 1365, says:

"Provisions having the same effect as section 281 of the Internal Revenue Code of 1954 (as added by the first section of this Act) shall be deemed to be included in the Internal Revenue Code of 1939, effective with respect to all taxable years to which such Code applies."

Having thus made the statute retroactive, it is reasonable to assume that Congress wanted to restore corporations such as Chicago Union Station to a position similar to that which would have existed had Section 281 been in force in 1951 and 1952. In order to do this, it is this court's opinion that the $26,714 paid in taxes in 1960 as a direct result of the settlement agreement should be refunded with interest to the plaintiff, Chicago Union Station.

It is, therefore, ordered that plaintiff's motion for summary judgment be, and it is hereby granted, and defendant's motion for summary judgment be, and it is hereby denied. It is further ordered that defendant pay to plaintiff the amount of $26,714, plus interest.