**UNITED STATES of America,
Plaintiff,**

v.

**CHICAGO & EASTERN ILLINOIS RAILROAD COMPANY, Defendant.**

**No. 70 C 2844.**

United States District Court,
N. D. Illinois, E. D.

Sept. 20, 1972.

The question presented is whether the United States is entitled to judgment against the defendant, because of the application of Section 281 of the Internal Revenue Code of 1954 to the defendant's tax years 1948 and 1949.

The statutes involved are the pertinent provisions of Section 281 of the 1954 Internal Revenue Code (26 U.S.C.). No regulations have been promulgated for Section 281.

This claim has had a most complicated history which is to be found in the Stipulation of Facts filed in this proceeding, in the case of Chicago and Western Indiana Railroad Co. v. Commissioner, T. C. Memo 1961–103, aff'd. 303 F.2d 796 (C.A. 7, 1962), and in the legislative history of Section 281 of the Internal Revenue Code of 1954 (Senate Finance Committee Report on P. L. 87–870).

Defendant, Chicago & Eastern Illinois Railroad Company (hereinafter referred to as C&EI) was, during the tax years 1948 and 1949, a one-fifth owner of the Chicago and Western Indiana Railroad Company (hereinafter referred to as C&WI).[1]

James .Thompson, U. S. Atty., R. A. Filpi, Asst. U. S. Atty., for plaintiff.

Patrick C. Mullen and James H. Durkin, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

PARSONS, District Judge.

This civil action has been brought by the United States to recover Federal income tax refunds for the years 1948 and 1949 which the plaintiff alleges were erroneously paid to the defendant.

The cause is before me at this time for a ruling as to plaintiff's Motion for Summary Judgment and defendant's Cross Motion for Summary Judgment.

The C&WI is a railroad corporation engaged in the primary business of providing railroad terminal and switching facilities and services to the railroad industry, including its five shareholders.

On December 31, 1947, defendant, along with the other shareholders of the C&WI, entered into a contract with the C&WI, which governs the treatment of income and the allocation of expenses between C&WI and its shareholders. Under this agreement, income from operations of the station and terminal facilities was applied to the expense incurred in such operation and any revenue received by the C&WI beyond that necessary to set off against such expenses was applied by the C&WI as a credit

1. The five joint owners of the C & WI were the Erie Lackawanna Railroad Company (formerly the Erie Railroad), the Monon Railroad Company (formerly the Chicago, Indianapolis and Louisville Railroad Company, the Grand Trunk Western Railroad Company, the Wabash Railroad Company, and the Chicago and Eastern Illinois Railroad Company (the defendant).

against charges for services and facilities rendered to the shareholders.

The C&WI and the defendant reported their income tax liabilities in accordance with the terms of the 1947 agreement; the C&WI reported losses of $33,584.57 and $33,584.56 in its returns for the years 1948 and 1949 (Stip. 5).

The Internal Revenue Service audited the returns of the C&WI and determined that its accounting methods were improper and asserted tax deficiencies for the years 1948 through 1951. The Tax Court of the United States sustained the Service's determination in their opinion reported at T.C. Memo 1961–103, and the Seventh Circuit affirmed at 303 F. 2d 796, *supra*. That decision required the C&WI to revise its tax accounting so as to require it to report in its return all income, including the income it received from nonshareholder sources (Stip. 7).

The statute of limitations precluded the prospective assessment of additional income tax for the years 1948 and 1949. Thus, only the tax liabilities for the years 1950 and 1951 were made the subject of litigation in the above reported opinions.

Based upon the Internal Revenue Service's audit of the C&WI's returns and the assertion of tax deficiencies, the defendant filed claims for refunds for the years 1948 and 1949, maintaining that should the Service be correct as to the C&WI, the same form of accounting would greatly inure to the benefit of the defendant and it would be entitled to a substantial refund of taxes.

Plaintiff contends that because the *C&WI* decision resulted in substantial liabilities to the C&WI, but in large windfalls to its five shareholders, Congress enacted Pub.L. 87–870. Section 2 of which provides:

"Provisions having the same effect as section 281 of the Internal Revenue Code of 1954 (as added by the first section of this Act) shall be deemed to be included in the Internal Revenue Code of 1939, effective with respect to

all taxable years to which such Code applies."

Defendant contends that Congress enacted Pub.L. 87–870 as a relief measure due to the financial straits of railroads and the near disasterous effects the decisions of the Tax Court and Court of Appeals in the Chicago and Western Railroad v. Commissioner case, *supra*, had upon the financial structure of terminal railroad corporations, and their railroad shareholders.

Pub.L. 87–870 enacted on October 23, 1962, added Section 281 to the 1954 Internal Revenue Code. Section 281, under certain circumstances, applies to terminal railroad corporations, such as the C&WI, and to shareholder corporations, such as the defendant, and sets out the method by which the taxable income of such corporation is to be computed. That section, defining "related terminal income," provides that such income generated by the terminal railroad company is not to be treated for tax purposes as having been distributed to the shareholders when such income is applied by the terminal railroad company to reduce the charges owed by the shareholders for terminal services rendered or for the use of facilities; furthermore, the amount by which the shareholders' charges are thus reduced by the application of such "related terminal income" is not to be treated as taxable income to the terminal railroad company. The "related terminal income" used to reduce a shareholder's charges shall not be treated as taxable income to that shareholder, and the shareholder may not claim an expense deduction for the charges to which the "related terminal income" is so applied (Stip. 8).

In effect, a terminal and its shareholders are permitted to treat such related terminal income as provided in the 1947 agreement between the C&WI and the defendant, should the taxpayers so desire and agree. Thus, the terminal's related terminal income could be credited against a shareholder's indebtedness, without incurring a constructive divi-

dend to the shareholder or taxable income to the terminal.

At the enactment of P.L. 87–870, with its retroactive provisions, the Seventh Circuit vacated its orders in Chicago and Western Indiana v. Commissioner, *supra*, and remanded the case to the Tax Court with instructions to enter a decision for the years in that suit (1950–51) in conformity with Section 281.

In order to determine the amount of dividends paid by C&WI to its shareholders for the years 1948 and 1949, it was necessary to determine the C&WI's earnings and profits (Stip. 10). Upon request of the Internal Revenue Service for such a determination to be made, comprehensive studies of the earnings and profits were made for the years 1913 through 1964. Three earnings and profits computations were made by C&WI and submitted to the Service. The third computation, bearing date of July 28, 1967, was approved and made the basis of the Service's determination letter, dated August 28, 1967, in which the Service took the position that Section 281 of the Code was not applicable to the C&WI's tax years 1948 and 1949, and held that the major portion of the distributions for such years were taxable dividends (Stip. 10). Accordingly, the Internal Revenue Service took the position that a one-fifth portion of the total distributions for 1948 and 1949 were allocable to defendant, and, to the extent of C&WI's current and accumulated earnings and profits, were to be treated as taxable dividend income of the defendant (Stip. 13).

In accordance with the provisions of the determination letter, dated August 28, 1967, refunds were paid to defendant, pursuant to its prior claims, on November 21, 1968, in the amount of $90,808.49, including interest, for the year 1948, and in the amount of $674.73 including interest, for the year 1949 (Stip. 14).

Plaintiff contends that it subsequently realized that it had calculated the refund

upon the legal assumption that Section 281 did not apply to the defendant for the years 1948 and 1949. Thus, on April 10, 1970 the Internal Revenue Service issued to the C&WI a revised determination in which it applied Section 281 to the years 1948 and 1949 and recomputed the C&WI's income on the basis of Section 281(a).

Had the statute of limitations not closed the tax years 1948 and 1949 for the C&WI, the principles of law applied to the years 1950 and 1951 by the United States Tax Court in Chicago and Western Indiana Railroad Company v. Commissioner, *supra*, would have resulted in large deficiencies in income tax for the C&WI for those earlier years. However, a computation of the C&WI's tax liability for 1948 and 1949 in the manner prescribed by Section 281(a) of the 1954 Code would have resulted in a reduction of this otherwise-barred deficiency but would not have resulted in any overpayment of income tax for such years. A recomputation of each shareholder's tax liability for 1948 and 1949 in the manner prescribed by Section 281(b) would have resulted in a correlative increase in its liability (Stip. 19).

Neither defendant nor any of the other shareholders of C&WI consented in writing, as provided by Section 281(e)(2)(D), to an assessment of a deficiency, for the years 1948 and 1949, based upon a recomputation of their tax liabilities with respect to their allocable shares of the adjustment to taxable income of C&WI as a result of the recomputation of its income under Section 281(a) of the Code (Stip. 20).

On November 13, 1970, within the statute of limitations, the United States filed this action to recover the refund that it contends was erroneously paid to the defendant.

The parties have stipulated that, for the purpose of delimiting the issue and presenting the legal question to be resolved in this proceeding, if the contention of the defendant is correct that Section 281(e) bars a recomputation under

Section 281 of the defendant's taxable income for 1948 and 1949, then the Internal Revenue Service's letter ruling of August 28, 1967, and accompanying statement, sets forth the correct taxable status of the distributions made by the C&WI for 1948 and 1949; furthermore, such a determination would render the refund made to the defendant here on November 21, 1968, a proper refund. Defendant also contends that if Section 281 is not applicable to the C&WI because of the operation of Section 281(e) then Section 281 would not be applicable to defendant as a shareholder of C&WI for the years in question (Stip. 21).

The parties also stipulate that if the contention of the United States is correct that (regardless of the applicability of Section 281 to the C&WI for its tax years 1948 and 1949) Section 281(e) does not bar a recomputation under Section 281 of the defendant's taxable income for 1948 and 1949, then the Internal Revenue Service's letter ruling of April 10, 1970 sets forth the correct taxable status of the distributions made by C&WI for 1948 and 1949; furthermore, such a determination would render the refund made to the defendant on November 21, 1968, an erroneous refund to the extent alleged in plaintiff's complaint.

The Internal Revenue Code provides for those occasions on which the Service erroneously issues a tax refund. The United States is authorized to file a civil suit in the federal district court to recover the refund erroneously paid by Section 7405 of the 1954 Code.

"The Government by appropriate action can recover funds which its agents have wrongfully, erroneously or illegally paid." United States v. Wurts, 303 U.S. 414, 415, 58 S.Ct. 637, 638, 82 L.Ed. 932 (1938).

This Court agrees with defendant's contention that Section 281 is to be construed and administered to accomplish relief to terminal railroads.

Section 281 was enacted . . . . the report of the Senate Committee on Finance stated, with an eye to the "financial problems faced by the railroads." The Committee felt it was "undesirable to increase their overall tax burdens." 1962 U.S.Code Cong. & Adm.News, p. 3990; Chicago Union Station Company v. United States, D.C., 276 F.Supp. 577 (1967).

However, it is axiomatic that before relief may be granted it must be shown that the defendant is indeed entitled to the relief intended by Section 281.

Section 281(e) sets forth the applicability of the statute for the years ending prior to 1962. The taxpayer must have filed a return for the year in question computing its income taxes in the manner prescribed by certain previous subsections. Subsection (a) governs the terminal itself and subsection (b) governs its shareholders, such as the defendant.

The question then arises as to whether defendant computed on its returns for the years 1948 and 1949 its income as prescribed by Section 281(b). This Court believes that defendant did so compute its income. The defendant in reporting its 1948 and 1949 taxes did not consider that it had paid or incurred any amount by virtue of a discharge of its liability to the C&WI (Stip. 15). The defendant did not consider that it had received any distribution from the C&WI, by virtue of such discharge (Stips. 5 and 15). The defendant apparently does not contest that it meets the preliminary computational test established by Section 281(b) (Stip. 22). The prerequisite for applying such a computation is a written agreement entered into prior to the beginning of the pertinent taxable year between the terminal railroad and its shareholders. Such an agreement has been described (Stip. 4 and 5). That agreement was made on December 31, 1947, prior to the beginning of 1948.

Plaintiff asserts and this Court agrees that Section 281(e)(1) is drafted in a disjunctive style. It provides that Section 281 will apply if a terminal rail-

road computed its tax in accord with Section 281(a), *or*, if a shareholder of a terminal, it computed its return in accord with Section 281(b).

The defendant argues that its tax treatment must be equivalent to that of the terminal railroad maintaining that the provisions for a terminal railroad are "conjunctive and interdependent in every respect." However, there is no demonstration by the defendant of any such interdependence within the terms of the statute. The only conjunctive language that defendant has referred to is the word "and" between Section 281(e)(1) and Section 281(e)(2) which is immaterial to the issue involved here —whether tax treatment as to the shareholders and the terminal must be identical.

The defendant contends that under the terms of Section 281(e), Section 281(b) may not be applied to its tax years 1948 and 1949.

Subsection (e)(2) states in pertinent part:

This section shall apply to a taxable year for which the assessment of any deficiency, or for which refund or credit of any overpayment, whichever is applicable, was prevented, on the date of enactment of this section, by operation of any law or rule of law . . . .

if and only if four rigid tests are met. The Government has admitted that these tests cannot be met (Stip. 20).

■ However, the Government contends this subsection is irrelevant and immaterial, for the reason that the 1948 and 1949 tax years of the defendant were not closed on October 23, 1962, the date of the enactment. This Court agrees. Due to the pendency of the claims for refund these years were open (Stip. 12). These claims were based upon the exact transactions governed by Section 281—the tax treatment to the defendant arising out of the debiting to its expense accounts by the C&WI of constructive dividends otherwise payable to the defendant.

The defendant did compute and pay its taxes for 1948 and 1949 based upon the accounting method provided by Section 281(b), i. e., it did not take into income those amounts debited to its expense account by the C&WI, nor did it, in respect to that debiting, claim the corresponding deductions for intercorporate dividends received and business expense. It treated the transaction as a wash, just as Section 281 treats the transaction as a wash, to the extent of related terminal income. Thus, the Internal Revenue Service had no basis in 1962 for making an additional assessment against the defendant for the years 1948 and 1949, even had the statute of limitations permitted. It appears that insofar as Section 281(e)(2) is concerned, the "whichever is applicable" language must refer to a refund or credit for overpayment.

Such a refund was not barred to the defendant for its years 1948 and 1949, as of October 23, 1962.

On the contrary, the defendant's claims had been filed, and though not yet acted upon, remained pending on the date of the enactment of Section 281. If defendant's claim had then been denied, a refund could have been sued for at any time within two years from the date of the notice of disallowance. Section 6532(a) of the Internal Revenue Code of 1954.

The Government has not sought to recover the full amount of the 1968 refund to the defendant. The total amount of that refund, is $91,483.22 (Stip. 14), but the Government claims that only $88,650.48 was erroneous. The difference is attributable to nonrelated terminal income, to which the Government correctly contends Section 281 does not apply; that income would be governed by the rule of Chicago and Western Indiana Railroad Co. v. Commissioner, *supra*.

The 1948 and 1949 tax years of the defendant were open pending the determination of its claims for refund; at the same time it must be noted that the

1948 and 1949 tax years of the C&WI were irrevocably closed (Stip. 19).

I have previously noted that Section 281(e)(1) is drafted in a disjunctive manner. Section 281(e)(1) refers to the "taxable year" of the terminal or the terminal's shareholder. The statute must be taken as a whole and read in a twofold manner. Clearly subsection (a), entitled "Computation of taxable income of terminal railroad corporations," provides a method of computation as to the terminal; subsection (b), entitled "Computation of taxable income of shareholders," provides a separate method as to the shareholders of the terminal. The statute does not require that either computation is dependent upon the imposition by the Government, upon the other party, of the other computation.

■ The defendant has repeatedly alleged that Section 281 applies to a pre-1962 year only if the tests of Section 281(e)(2)(A) through (e)(2)(D) are met. However, the key element is that those tests must be met for a pre-1962 year only if a refund or credit for that year "was prevented . . . . by the operation of any law or rule of law" on October 23, 1962. Was the defendant so prevented? Obviously not, for it had exercised such a right previously. The defendant may not now assert a prevention that did not occur. No such "law or rule of law" prevented a credit or refund to defendant on October 23, 1962 and defendant did not contest this fact. Instead, the defendant has predicated its assertions upon the word *only* which leads into the four requirements of Section 281(e). I must, therefore, reiterate that those four requirements apply only if a refund or credit for that year "was prevented . . . . by the operation of any law or rule of law"

on October 23, 1962. The defendant has not shown that to be the case. It must not now be heard to say it was thus prevented when it has an open and pending claim. The prevention provision has removed Section 281(e)(2) from any relevance to the present action.

The Rule of Chicago and Western Indiana Railroad Co. v. Commissioner, *supra*, imposed a burden on the C&WI but at the same time a benefit was conferred to its shareholders including the defendant. The defendant claimed that benefit for the years 1948 and 1949, although the benefits accruing to the United States and against the C&WI for those years were barred by the statute of limitations (Stips. 5, 6 and 7).

With the enactment of Section 281 the C&WI was relieved of its burden. At the same time, Section 281 withdrew the benefits from the C&WI's shareholders. However, through an administrative error the defendant received those benefits.

■ The defendant may not retain those benefits, because of the statutory bar against the C&WI, toward which the Government was never able to establish any tax liability for the years 1948 and 1949 in the first place. The years 1948 and 1949 of the C&WI were closed; thus, no burden was imposed, which Section 281's later enactment could relieve. However, the years 1948 and 1949 of the defendant were open; the defendant claimed a benefit and that benefit was granted erroneously and must now be returned.

Accordingly, it is hereby adjudged, ordered and decreed that the Government's Motion for Summary Judgment is granted against the defendant, in the amount of $88,650.48, plus interest according to law.