## UNITED STATES *v.* WURTS.

No. 499. Argued February 28, 1938.—Decided March 14, 1938.

*Mr. Arnold Raum,* with whom *Solicitor General Reed, Assistant Solicitor General Bell, Assistant Attorney Gen-*

*eral Morris,* and *Messrs. Sewall Key* and *J. Louis Monarch* were on the brief, for the United States.

*Mr. Claude C. Smith,* with whom *Messrs. Russell Duane* and *Sanford D. Beecher* were on the brief, for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

Under the Revenue Act of 1928,[1] forbidding suit by the United States to recover an erroneous tax refund unless brought "within two years after the making of such refund," does the two year limitation begin when the refund is allowed or when it is paid?

The Court of Appeals affirmed[2] the District Court's judgment holding the Government barred by this limitation because the present suit was not brought within two years after the Commissioner allowed the refund by signing the schedule of over-assessments.

The facts show that:

March 15, 1932, the Commissioner erroneously approved a refund of taxes paid by respondent for the year 1929. April 30, 1932, a check was mailed to the taxpayer for this erroneous refund. April 26, 1934, more than two years after the allowance of the refund, but less than two years after actual payment, the Government brought this suit to recover the erroneous refund.

The Government by appropriate action can recover funds which its agents have wrongfully, erroneously, or illegally paid.[3] "No statute is necessary to authorize the United States to sue in such a case. The right to sue is independent of statute, . . ." *United States* v. *Bank of the Metropolis,* 15 Pet. 377, 401. Section 610 of the

[1] Revenue Act of 1928, c. 852, 45 Stat. 791, § 610.

[2] 91 F. (2d) 547.

[3] *Wisconsin Central Railroad* v. *United States,* 164 U. S. 190, 212; see *United States* v. *Burchard,* 125 U. S. 176, 180, 181.

1928 Act, relied upon as barring recovery of this erroneous and unwarranted tax refund, does not grant the Government a new right, but is a limitation of the Government's long-established right to sue for money wrongfully or erroneously paid from the public treasury. Ordinarily, recovery of Government funds, paid by mistake to one having no just right to keep the funds, is not barred by the passage of time.[4] There is no contention here that respondent has any right to retain this refund erroneously paid by the Government. His defense is that the statutory bar prevents recovery. The Government's right to recover funds, from a person who received them by mistake and without right, is not barred unless Congress has "clearly manifested its intention"[5] to raise a statutory barrier.

Section 610—urged by respondent as a statutory barrier—requires that the Government bring suit "before the expiration of two years *after the making of such* [*erroneous*] *refund. . . .*" Respondent contends that the Revenue Act of 1932[6] indicated Congressional intent to designate the date of *allowance* of a refund (the date the Commissioner signs the schedule of over-assessments) as the date of refund for computing the period of limitations under § 610. The 1932 Act provides:

"Where the Commissioner has (before or after June 6, 1932) signed a schedule of overassessments in respect of any internal revenue tax imposed by [the Revenue Act of 1932] or any prior revenue Act, the date on' which he first signs such schedule (if after May 28, 1928) shall be considered *as the date of allowance* of refund or credit in respect of such tax." This Act in no manner

---

[4] *Grand Trunk Western Ry. Co.* v. *United States,* 252 U. S. 112, 121.

[5] Compare, *United States* v. *Nashville, C. & St. L. Ry. Co.,* 118 U. S. 120, 125.

[6] Revenue Act of 1932, c. 209, 47 Stat. 169, § 1104.

relates to limitations on suits for erroneous refunds. It has no purpose in common with § 610 of the 1928 Act. The 1932 Act throws no light on the meaning of § 610.

Section 610 is clear when its words are given their commonly accepted import. "Congress may well be supposed to have used language in accordance with the common understanding."[7] Webster's New International Dictionary (2d ed., Unabridged) defines "refund" as "that which is refunded" and defines the transitive verb as: "to return (money) in restitution, repayment . . ." Only by ignoring the common understanding of words could "making . . . [a] refund" be considered synonymous with "allowing a refund."

That Congress had in mind the separate and distinct meanings of these two expressions is clearly demonstrated in House Report No. 2, 70th Congress, 1st Session, p. 34, 35, containing the Committee Report on the Revenue Act of 1928:

"The section (610) provides that any erroneous refund, . . . may be recovered by suit brought in the name of the United States if such suit is begun within two years *after the making of the refund.*"

Immediately following, in referring to § 614, the Report stated:

"The principal change made in existing law is that in the case of a refund the interest period now terminates *with the allowance of the refund, a date which often precedes the actual making of the refund . . .*"

The Commissioner's signature on a schedule of over-assessments does not finally establish a claimant's right to a refund and does not preclude further investigation and consideration of the claim. The Commissioner could later take his signature from the schedule and as pointed out by this Court might—even after a check was signed

[7] *Union Pacific R. Co.* v. *Hall,* 91 U. S. 343, 347.

and mailed—cancel the payment and revoke the authority of payment erroneously made.[8]

It would require language so clear as to leave room for no other reasonable construction in order to induce the belief that Congress intended a statute of limitations to begin to run before the right barred by it has accrued. Obviously, the Government had no right to sue this taxpayer to recover money before money had been paid to him. The construction urged by respondent would allow the statute of limitations to begin to run against recovery on an erroneous payment before any such payment is made. As said by a House Committee in reporting on a statute of limitations contained in a revenue act,[9] "Logically the period of limitation should run from the date of payment, since it is at that time that the right accrues."

We are of opinion that Congress did not intend the limitations of § 610 to run against the Government until the Government's right "has accrued in a shape to be effectually enforced."[10]

This statute does not begin to run against the Government when a claim is erroneously allowed. It begins to run from the date of payment. The judgment below is not in accord with this construction of the statute and is

*Reversed.*

MR. JUSTICE CARDOZO and MR. JUSTICE REED took no part in the consideration or decision of this case.

---

[8] *Daube* v. *United States,* 289 U. S. 367, 372.

[9] House Report No. 179, 68th Congress, 1st Session, p. 27.

[10] Cf., *Borer* v. *Chapman,* 119 U. S. 587, 602.