**UNITED STATES of America,**
**Plaintiff,**

v.

**ARTHUR G. McKEE & COMPANY,**
**a corporation, Defendant.**

**Civ. A. No. 32109.**

United States District Court
N. D. Ohio, E. D.

March 22, 1956.

Edwin G. Halter, H. B. Griswold, A. A. Sommer, Jr., Cleveland, Ohio, for defendant.

H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, T. D. Taubeneck, Attys., Dept. of Justice, Washington, D. C., Sumner Canary, U. S. Atty., Eben H. Cockley, Asst. U. S. Atty., Cleveland, Ohio, for the U. S.

CONNELL, District Judge.

There is here before the Court a motion filed by the defendant, Arthur G. McKee & Company, to dismiss the complaint because the plaintiff fails to state a claim upon which relief can be granted: defendant claims this suit is barred by the Statute of Limitations pertaining to such actions. This motion is filed under Rule 12(b), Federal Rules of Civil Procedure, 28 U.S.C.A.

The complaint, filed on behalf of the Government, states that the United States Treasury Department paid to the defendant, on or about January 9, 1946, the sum of $235,085.75 in redemption of bonds which were issued as a credit based upon defendant's excess profits tax liability for the year 1943. Thereafter a further credit to the account of the defendant, Arthur G. McKee & Company, was established on June 13, 1947 in the amount of $2,753.23. The Government alleges in its complaint that these credits were excessive and erroneous because of erroneous calculations of defendant's ex-

cess profits tax liability for the year 1943. Consequently, it is claimed that by virtue of said excessive and erroneous credits the defendant is indebted to the United States in the amount of $23,894.15 together with interest.

The undisputed facts are that certain bonds were issued by the Treasury Department to the defendant under the provisions of Section 780 of the Internal Revenue Code of 1939, 26 U.S.C.A. Excess Profits Taxes, page 233, entitled "Post-war refund of excess profits tax". This section provides in part:

"§ 780. Post-war refund of excess profits tax

"(a) In general. The Secretary of the Treasury is authorized and directed to establish a credit to the account of each taxpayer subject to the tax imposed under this subchapter, for each taxable year ending after December 31, 1941 (except in the case of a taxable year beginning in 1941 and ending before July 1, 1942), and not beginning after the date of cessation of hostilities in the present war, of an amount equal to 10 per centum of the tax imposed under this subchapter for each such taxable year."

Thereafter these bonds, representing an amount equal to 10 per centum of the excess profits tax for the year 1943, were redeemed in the years 1946 and 1947. It was then determined that adjustments were necessary in the computation of this 10%. The defendant repaid the sum of $58,533.81 to the Treasury after negotiations with the Government. These negotiations were stated, upon oral hearing, to have taken place in the year 1948. The record does not disclose the dates thereof. Eight years have elapsed since the last bond redemption and seven years have elapsed since the negotiations and subsequent repayment of $58,533.81 by the defendant.

The defendant bases its motion for dismissal on the provisions of Section 7405 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7405, which section relates to actions for the recovery of erroneous refunds. The periods of limitation on actions under that section are as follows:

"§ 6532. Periods of limitation on suits * * *

"(b) Suits by United States for recovery of erroneous refunds.

"Recovery of an erroneous refund by suit under section 7405 shall be allowed only if such suit is begun within 2 years after the making of such refund, except that such suit may be brought at any time within 5 years from the making of the refund if it appears that any part of the refund was induced by fraud or misrepresentation of a material fact."

The only question before the Court is whether the issuance of bonds to the defendant and their redemption by the United States under the provisions of Sections 780–784 of the 1939 Internal Revenue Code, specifically providing for a "Post-war refund of excess profits tax" was a "refund" to the taxpayer as claimed by the defendant or simply a reduction of a tentative tax liability as alleged by the Government. If this repayment of a portion of the defendant's excess profits tax was a "refund", then the two year statute of limitations applies and bars the action of the Government.

The Government's position that when Congress spoke of "erroneous refunds" it did not intend to limit the vast number of "bond redemptions" which the Treasury makes year after year is not well-taken. In the first instance, the redemption of the bonds, issued as part of the process of refunding a portion of the defendant's excess profits tax, does not change the character of the transaction. Actually the bonds were simply a mechanism for handling the repayment. In certain circumstances, in fact, the payment could have been made in cash. See: Section 781(c), 1939 Code, 26 U.S.C.A. Excess Profits Taxes, page 236. It is only when actual payment has been erroneously made, that the Government has the right to recover.

The Government admits that the excess profits tax of the defendant for the year 1943 was paid in full. It argues, however, that since the 10% credit to the taxpayer's account was an automatic statutory requirement, the effect was a reduction in the tax rate; and that the credit was a fiscal measure;—somewhat in the nature of a forced savings program to deal with wartime inflation and postwar needs.

It is evident that the refund was not to be made until after the conclusion of hostilities, and consequently these statutory provisions did not alter the tax liability during the war years. Each taxpayer had to pay the full 100% of his excess profits tax.

While the Government states that the decisive matter in this action is the ambiguity of the word "refund", the Court here finds no such ambiguity. In Old Colony Railroad Co. v. Commissioner, 284 U.S. 552, 52 S.Ct. 211, 213, 76 L.Ed. 484, the Supreme Court quoted the following language from Lynch v. Alworth-Stephens Co., 267 U.S. 364, 45 S.Ct. 274, 69 L.Ed. 660, and stated that the rule incorporated applied to taxing statutes:

"'* * * the plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover.'"

In United States v. Wurts, 303 U.S. 414, 58 S.Ct. 637, 639, 82 L.Ed. 932, the Supreme Court said:

"'Congress may well be supposed to have used language in accordance with the common understanding.' Webster's New International Dictionary 2d Ed. Unabridged defines 'refund' as 'that which is refunded' and defines the transitive verb as: 'to return (money) in restitution, repayment * * *'."

The defendant has cited to the Court the report of the Senate Finance Committee on the Revenue Act of 1942 which states as follows:

"Section 780 provides for the *repayment* to taxpayers of part of the excess profits tax paid by them."

It appears quite clear, therefore, that Congress not only designated this type of transaction as a refund in its statutory provisions, but also in its reports characterized it as a "repayment"—the very word used by the Supreme Court to define a refund. United States v. Wurts, supra.

For the foregoing reasons, it is the conclusion of the Court that the issuance of bonds by the Government to a taxpayer under Sections 780–784 of the 1939 Internal Revenue Code constitutes a *refund*. The Government, therefore, in its action to recover an erroneous refund is subject to the two-year Statute of Limitations.

The motion of the defendant to dismiss the complaint is granted.