SARASOTA AVIONICS INTERNA-
TIONAL, INC., a Florida cor-
poration, Plaintiff,

v.

WELLS FARGO BANK, N.A., successor
by merger to Wachovia Bank, Nation-
al Association, a national banking as-
sociation, formerly known as First
Union National Bank, Defen-
dant/Counter–Plaintiff/Third–Party
Plaintiff,

v.

United States of America, Third–
Party Defendant.

Case No. 8:12–cv–830–T–35MAP.

United States District Court,
M.D. Florida,
Tampa Division.

Sept. 24, 2013.

Harry Wagner Haskins, Law Office of Harry W. Haskins, Sarasota, FL, for Plaintiff.

Matthew G. Brenner, Ronald David Edwards, Jr., Lowndes, Drosdick, Doster, Kantor & Reed, PA, Orlando, FL, for Defendant/Counter–Plaintiff/Third–Party Plaintiff.

Charles T. Harden, III, U.S. Attorney's Office, Tampa, FL, for Third–Party Defendant.

### ORDER

MARY S. SCRIVEN, District Judge.

**THIS CAUSE** comes before the Court for consideration of the Motion for Summary Judgment (Dkt. 45) filed by the United States of America ("United States"), and the Responses in opposition thereto filed by Wells Fargo Bank, N.A. (Dkt. 56) and Sarasota Avionics International, Inc. (Dkt. 51). Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS in part and DENIES in part** the United States' Motion for Summary Judgment (Dkt. 45).

## I. BACKGROUND

This action involves a dispute over nine United States Treasury Checks deposited in the bank account of Plaintiff Sarasota Avionics International, Inc. ("Avionics"), which was held by Wells Fargo Bank, N.A. ("Wells Fargo"), successor by merger of Wachovia Bank, N.A.

### a. Procedure

On May 17, 2011, Avionics filed a Complaint against Wells Fargo in state court. (Dkt. 1–4) On July 14, 2011, Avionics filed an Amended Complaint against Wells Fargo. (Dkts. 1–2; 2) In the Amended Complaint, Avionics states that Wells Fargo placed a freeze on its business checking account in the amount of $22,066.47. (Dkt. 1–2) Due to the account freeze, Avionics asserts five (5) claims against Wells Fargo: (1) Conversion, (2) Unauthorized and Improper Payment of Checks, (3) Unauthorized and Improper Charge–Backs, (4) Negligence, and (5) Breach of Warranty of Presentment. (Dkt. 1–2)

Thereafter, Wells Fargo filed a Third–Party Complaint in interpleader against the United States and a Counterclaim against Avionics. (Dkt. 5) The United States then removed this action to this Court. (Dkt. 1) Subsequently, Avionics filed a Motion to Remand. (Dkt. 12) The motion was denied. (Dkt. 30)

While before this Court, the United States sought and obtained leave to amend its Answer to set forth crossclaims against

Avionics and counterclaims against Wells Fargo. *See* (Dkts. 31; 32) The allegations and causes of action asserted in the cross-claim and counterclaims are the same as to both Avionics and Wells Fargo: (1) a declaratory judgment that the United States has no liability on, and is the sole party entitled to claim, the disputed Treasury Checks, as well as an injunction directing the return of the disputed funds to the United States; (2) Unjust Enrichment; and (3) Payment by Mistake of Fact. (Dkt. 32) The United States now moves for summary judgment regarding its unjust enrichment claim and payment by mistake of fact claim.

### b. Undisputed Facts

Avionics, a Florida corporation, sells equipment parts for airplanes. (Dkt. 61) Avionics maintained a business checking account with Wells Fargo. *Id.* On July 11, 2007 and August 30, 2007, a total of nine Treasury Checks were deposited in the bank account of Avionics. *See* (Dkts. 61; 41; 45–2) The money deposited into Avionics' account on August 30, 2007, which was $13,160.47, exceeded the $13,128.00 that

Avionics expected to receive from the sale of equipment to a customer. (Dkt. 61 at ¶ 10) On September 6, 2007, in an e-mail exchange with a Wachovia bank employee, Shawn McClintock, who was then-Controller of Avionics, stated:

> This is the most bizarre thing. None of the owners know anything about these checks, and neither do I. We can't figure out who would make a deposit like this. You did say the deposit was made in a Punta Gorda branch, correct? It's not a big deal because it's essentially 'found money'—we're not complaining—but it would be nice to know who made this deposit. Is it possible to delve any further?

*Id.* at ¶ 11.

In the present form, the nine Treasury Checks appear to be made payable to Avionics. A comparison, however, of the United States Department of Treasury's ("Department") records in the present form reveals that on all the Checks the payee names and addresses have been altered, as set forth in the following chart.[1] (Dkt. 45–1)

| | Original Check | | Altered Check | |
| Check No. | Payee Name (as issued) | Payee Amount (as issued) | Payee Name (as altered) | Payee Amount (Amt. paid on Check by U.S.) |
| --- | --- | --- | --- | --- |
| 2308–13806235 | J.R. | $455.69 | Sarasota Avionics, Inc. | $0 |
| 2308–02971032 | B.M | $1,987.00 | Sarasota Avionics International | $1,987.00 |
| 2049–36642434 | A.A. | $2,670.60 | Sarasota Avionics, Inc. | $2,670.60 |
| 2308–02951990 | C.G. & G.G. | $2,915.00 | Sarasota Avionics International | $2,915.00 |
| 2308–07172856 | C.M. | $1,964.00 | Sarasota Avionics International | $1,964.00 |
| 2308–07172854 | L.G. & G.G. | $2,190.00 | Sarasota Avionics International | $2,190.00 |
| 2307–97076481 | A.P. | $1,837.00 | Sarasota Avionics International | $1,837.00 |
| 2308–19764685 | J.Z. & N.G. | $4,401.18 | Sarasota Avionics, Inc. | $4,401.18 |
| 2308–15176284 | J.G. | $4,783.00 | Sarasota Avionics, Inc. | $4,783.00 |

1. The names of the actual payees are excluded for privacy reasons.

| Total: | $23,203.47 | $22,747.78 |
|---|---|---|

*Id.* Of the Checks, eight were tax refund checks and one was a settlement check issued to replace a prior Treasury Check. *Id.*

Upon presentment of eight of the Treasury Checks to the Federal Reserve, the United States paid a total of $22,747.78. *See* (Dkt. 45–1) The United States did not pay on Check number 2308–13806235, which was identified as being altered in the processing stream between acceptance at the initial bank and presentment to the Federal Reserve. *Id.* After paying those eight Checks, the United States received notice from the intended payees of Checks No. 2308–02971032 and No.2049–36642434 that they had not received their checks. *See id.* at ¶ 18. Each of the intended payees of those Checks submitted claims, and the Department reissued checks to those payees. *See id.* After receiving notice from those two payees, the Department reviewed its records for those two Treasury Checks and determined that it had already paid on them—No. 2308–02971032 in the amount of $1,987.00 and No. 2049–3662434 in the amount of $2,670.60, for a total of $4,657.60. *See id.* at ¶ 19. As a result, in 2007 and 2008, the Department exercised its regulatory authority to reclaim that $4,657.60 in funds from Wells Fargo. *See id.* Upon the United States' reclamation of the funds for the two Treasury Checks, Wells Fargo placed a hold on the remaining proceeds from the six Treasury Checks. (Dkts. 2 at ¶ 15; 4 at ¶ 15) In addition, Wells Fargo instituted a series of charge backs resulting in debits to Avionics' account. (Dkts. 2 at ¶ 17; 4 at ¶ 17)

Avionics filed this lawsuit initially in state court to have the funds released. (Dkt. 2) Wells Fargo filed a Third–Party Complaint, joining the United States and seeking to deposit the remaining proceeds into the Court's registry. (Dkt. 5) The United States filed counterclaims and crossclaims, seeking to have the $18,090.18 it paid on the six Checks returned to the United States.

## II. LEGAL STANDARD

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Fennell v. Gilstrap,* 559 F.3d 1212, 1216 (11th Cir.2009) (citing *Welding Servs., Inc. v. Forman,* 509 F.3d 1351, 1356 (11th Cir.2007)). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991).

Evidence is reviewed in the light most favorable to the non-moving party. *Fennell,* 559 F.3d at 1216 (citing *Welding Servs., Inc.,* 509 F.3d at 1356). A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case. *Denney v. City of Albany,* 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

When a moving party has discharged its burden, the non-moving party must then designate specific facts (by its own affidavits, depositions, answers to interrogatories, or admissions on file) that demonstrate there is a genuine issue for trial. *Porter v. Ray,* 461 F.3d 1315, 1320–1321 (11th Cir.2006) (citation omitted). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupport-

ed by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir.1985) ("conclusory allegations without specific supporting facts have no probative value."). If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact … the court may grant summary judgment if the motion and supporting materials … show that the movant is entitled to it. Fed.R.Civ.P. 56(e).

## III. DISCUSSION

The United States seeks entry of summary judgment against Avionics and Wells Fargo on its claims for unjust enrichment and payment by mistake of fact. The United States also moves for summary judgment as to Wells Fargo's claim for interpleader. The United States contends that there is no genuine issue of material fact and as a matter of law is entitled to summary judgment regarding its claims against Avionics and Wells Fargo. Wells Fargo and Avionics contend that the United States cannot establish the elements for its claims.

### i. *Unjust Enrichment*

First, as to the unjust enrichment claim, the United States contends that it conferred a benefit upon Avionics and Wells Fargo when it paid $18,090.18 on the six Treasury Checks and that this benefit was improperly retained by Avionics and Wells Fargo. The United States further contends that it would be inequitable to allow either Avionics or Wells Fargo to retain the funds paid by the United States on those Treasury Checks.

In response, Wells Fargo argues that the United States has not conferred a benefit upon it because it is, at most, in temporary possession of the funds arising from the Checks. Moreover, Wells Fargo asserts that it has not appreciated any benefit with respect to the funds because it has not asserted or maintained any claim,

right, or interest in the funds. Avionics claims that the United States has not conferred a benefit upon it because it lacks access to the funds due to the freeze placed on them by Wells Fargo.

■ In order to establish a claim for unjust enrichment against Avionics and Wells Fargo, the United States must show (1) that it conferred a benefit upon Avionics and Wells Fargo, (2) Avionics and Wells Fargo's appreciation of the benefit, and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit. *See Hercules, Inc. v. Pages*, 814 F.Supp. 79, 80 (M.D.Fla.1993).

■ In this case, the evidence is undisputed that the United States paid $18,090.18 on the six Treasury Checks that were deposited into the account of Avionics. The Court finds that those funds conferred a benefit upon Avionics and that Avionics appreciated the benefit. Shawn McClintock, Avionics comptroller, stated: "It's not a big deal because it's essentially 'found money'—we're not complaining—but it would be nice to know who made this deposit." (Dkt. 61 at ¶ 12) Moreover, Avionics continues to claim of entitlement to this "found money" despite its realization of the source of the funds. See (Dkt. 50 at 6)("Avionics was a party who was owed the funds in question[.]") Based on the undisputed fact that Avionics was not the original intended payee on the Checks, it would be inequitable to allow Avionics to retain the funds. Accordingly, the United States' Summary Judgment Motion as to unjust enrichment against Avionics is **GRANTED.**

■ As to Wells Fargo, however, there is no indication from the facts that the United States conferred a benefit upon Wells Fargo. Wells Fargo has disclaimed any interest in the funds and does not seek to retain the funds. In its response, Wells

Fargo asserts "[it] will turn the Funds over to the rightful owner." (Dkt. 56 at P. 3) Therefore, based on the facts of this case, the United States has not shown that Wells Fargo has appreciated any benefit. Accordingly, the United States Summary Judgment Motion as to unjust enrichment against Wells Fargo is **DENIED.**

### ii. *Payment by Mistake*

Next, as to the payment by mistake claim, the United States contends that it is entitled to summary judgment as a matter law against Wells ˙Fargo and Avionics. The United States asserts that it paid funds on the Checks and would not have done so if it had known of the alteration of those Checks. In response, Wells Fargo asserts that it is premature for this Court to rule on the United States' ability to recover the Funds from Wells Fargo until Avionics' claims against Wells Fargo are resolved. Avionics, on the other hand, relying on Florida's Uniform Commercial Code ("U.C.C.") contends that the party to bear the loss in this case is either the United States, the drawer of the Checks, or Wells Fargo, the depository bank because it failed to use ordinary care to detect the fraud. Avionics contends that it "cannot be found to bear the loss," and thus the United States is not entitled to Summary Judgment regarding its mistaken payment for the Checks against Avionics.

 In order to establish a claim for payment of mistake of fact against Avionics and Wells Fargo, the United States must show that payment occurred pursuant to an erroneous belief that was material to the decision to pay. *United States v. Wurts,* 303 U.S. 414, 58 S.Ct. 637, 82 L.Ed. 932 (1938); *United States v. Mead,* 426 F.2d 118, 124 (9th Cir.1970). In this case, it is undisputed that the subject Treasury

Checks were altered and the funds were mistakenly paid by the Department. Though it is unknown who the culprit was in this circumstance [2], it is undisputed that the funds never belonged to Wells Fargo or Avionics. Avionics' reliance on Florida's U.C.C. as codified in Section 673.4041 of the Florida Statutes to avoid disgorgements of these payments is misguided. Federal law, not state law, governs the rights and duties of the United States concerning commercial paper it issues. *See Clearfield Trust Co. v. United States,* 318 U.S. 363, 366, 63 S.Ct. 573, 87 L.Ed. 838 (1943) ("When the United States disburses its funds or pays its debts, it is exercising a constitutional function or power.") Also, Avionics' assertion that the United States' right to reclaim the funds has expired does not affect the analysis of whether the United States mistakenly made payments on the altered Treasury Checks.

 As such, it is undisputed that the United States mistakenly made payments of the altered Checks into Avionics' account, which was held by Wells Fargo. Accordingly, the United States' Summary Judgment Motion as to payment by mistake against Avionics is **GRANTED.** As to Wells Fargo, the United States' Summary Judgment Motion on its claim for payment by mistake is **DENIED** because Wells Fargo disclaims any interest in the funds and stipulates that any funds not directed to be paid to Avionics are to be paid to the United States.

In sum, it is undisputed that the subject Treasury Checks were altered and the funds were mistakenly paid by the Department to Avionics' account. As a result, the funds never belonged to Wells Fargo or Sarasota Avionics. Thus, the funds are

---

**2.** The parties do not address, nor does the Court seek to surmise who was responsible

for falsely depositing these checks on the account of Avionics.

due to be paid to the United States. Accordingly, a judgment directing the return of the funds by Wells Fargo, who disclaimed an interest in the funds, will be entered on stipulation. As such, Wells Fargo's Interpleader action and Motion for Entry of Interpleader Order are rendered MOOT.

## IV. CONCLUSION

It is hereby **ORDERED** that

a. United States of America's Motion for Summary Judgment (Dkt. 45) is **GRANTED in part and Denied in part.** The Motion is GRANTED as to United States' crossclaims against Sarasota Avionics International, Inc. and DENIED as to the United States' counterclaims against Wells Fargo Bank, N.A.

b. Sarasota Avionics International, Inc.'s Motion to Dismiss Crossclaim Against the United States of America (Dkt. 36) is **DENIED.**

c. Wells Fargo Bank, N.A.'s Motion for Entry of Interpleader Order (Dkt. 42) is **DENIED as MOOT.**

d. Wells Fargo Bank, N.A's Claim for Interpleader under 28 U.S.C. § 2410 is **DENIED as MOOT.**

e. The Court declines to retain supplemental jurisdiction over Avionics' five state law claims.

f. The Clerk of Court is **DIRECTED** to remand this case to the Circuit Court of the Twelfth Judicial Circuit, in and for Sarasota County, Florida, and provide that court with a copy of this Order.

g. The Clerk of Court is also **DIRECTED** to terminate the remaining pending motions and **CLOSE** this case.